1
2
3
4
5
6
7
8

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LONNIE MORRIS,                                 )   No. C 04-2813 SBA (pr)
                                               )
                   Petitioner,                 )   **ORDER DENYING PETITION**
        v.                                     )   **FOR WRIT OF HABEAS**
                                               )   **CORPUS ON ALL CLAIMS**
J. BROWN, Warden,                              )
                                               )
                   Respondent.                 )
_____            )

9                          **INTRODUCTION**

10          Petitioner Lonnie Morrris, a state prisoner incarcerated at San Quentin State Prison (SQSP) in

11   San Quentin, California, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C.

12   § 2254.  The matter is now submitted for the Court's consideration of the merits of the petition.  For

13   the reasons discussed below, the petition is DENIED as to all claims.

14                      **PROCEDURAL BACKGROUND**

15          In 1978, Petitioner was convicted in the Contra Costa County Superior Court of first degree

16   murder with special circumstances, robbery, burglary, and possession of a firearm by a felon.  He was

17   sentenced to a term of seven years to life in prison.

18          The present petition does not challenge Petitioner's underlying conviction.  Rather, in this

19   habeas action, Petitioner asserts that the Board of Parole Terms ("BPT") violated his due process

20   rights by finding him unsuitable for parole.

21          Petitioner was found unsuitable for parole by the BPT eight times before his 2002 parole

22   consideration hearing.  At his ninth parole suitability hearing on August 21, 2002, the BPT

23   considered Petitioner's individual circumstances, including letters of support by prison staff and

24   family members, institutional behavior, and future parole plans, that tended to show parole suitability.

25   However, the BPT ultimately denied parole, giving several reasons, including:  (1) the nature of the

26   commitment offense; (2) Petitioner's criminal history; (3) his marginal vocational upgrade; (4) his

27   lack of genuine remorse; and (5) the oppositions by the District Attorney and the victim's family.

28   (Resp't Ex. 2 at 49:16 - 51:26.)

1    Petitioner sought habeas corpus relief from the Contra Costa County Superior Court, and the

2    court denied the petition challenging the 2002 hearing in a reasoned decision dated November 13,

3    2003.  (Resp't Ex. 4.)  On March 30, 2004, the California Court of Appeal summarily denied his

4    habeas petition.  (Resp't Ex. 5.)  On June 9, 2004, the California Supreme Court denied his request for

5    review.  (Resp't Ex. 6.)

6    On July 13, 2004, Petitioner filed the present petition (docket no. 1).  On December 14, 2006,

7    Respondent filed an Answer (docket no. 12).  On January 18, 2007, Petitioner filed a Traverse

8    (docket no. 13).

9                                    **STANDARD OF REVIEW**

10   **I.    AEDPA**

11          Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may

12   grant a petition challenging a state conviction or sentence on the basis of a claim that was

13   "adjudicated on the merits" in state court only if the state court's adjudication of the claim:

14   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

15   established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

16   decision that was based on an unreasonable determination of the facts in light of the evidence

17   presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court has "adjudicated" a

18   petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the

19   petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim

20   advanced, rather than denying the claim on the basis of a procedural or other rule precluding state

21   court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004), cert. denied, 126

22   S. Ct. 484 (2005).  It is error for a federal court to review de novo a claim that was adjudicated on the

23   merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

24          Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of

25   parole.  See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

26          **A.    Section 2254(d)(1)**

27          Challenges to purely legal questions resolved by the state court are reviewed pursuant to

§ 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams  v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### 1.      Clearly Established Federal Law

"[C]learly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court.  Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a

3

particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir. 2003), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2.   "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412-13.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Williams, 529 U.S. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3.   "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-13.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court

4

had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable-standard is not a clear error standard.  Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point).  After Andrade, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them."  Id. at 1068.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.**    **Section 2254(d)(2)**

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state-court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**C.**    **Review of Parole Suitability Decisions**

The Ninth Circuit has applied § 2254(d) to review of parole suitability decisions.  See Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam); see also McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (assuming without deciding that AEDPA deferential standard of review under § 2254 applies to such decisions).

**II.**    **Exhaustion**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies,

either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claims asserted in the instant petition.

### **FACTUAL BACKGROUND**

The report considered at the BPT parole suitability hearing included the following information, derived from the Contra Costa County Probation Officer's Report (POR), about the murder:

> On 08/04/77, a silent alarm was activated at Musselman's Jewelry. San Pablo police officer Bob Wheeler answered the alarm.
>
> Morris and his crime partner entered the store, approached Mr. Musselman, engaging him in a conversation, a revolver was then pointed at Mr. Musselman.  He was ordered to lay on the floor and keep his head down or he would be killed.  His hands were taped together.  He heard Morris taking items from the display cases.  All at once everything went quiet, then there was one shot and someone said, "Let's get out of here."  When M[r]. Musselman finally untied himself he discovered Officer Wheeler laying on the floor bleeding.  Two (2) witnesses, one a police officer, saw Morris and his crime partner leave the store.
>
> Morris refused to talk to anyone from the Probation Department on the instant offense.  However, witnesses were able to identify Morris as the person who ran out of the store, a subsequence search of the area found Morris hiding in the crawl space under a nearby house.  After he was removed from his hiding place, police recovered a .38 caliber blue steel two-inch barrel revolver, close to where Morris had been hiding[.]

(Resp't Ex. 3, Life Prisoner Evaluation Report at 1-2 [brackets added].)

Petitioner chose not to talk about his crime during his parole board hearing, electing instead to stipulate to his testimony during previous hearings.  However, according to the same report quoted above, his version of the events are as follows:

> Morris stated that he and his accomplice decided to go to San Pablo to pull a robbery at a jewelry store.  During the commission of the robbery a police officer entered the store.  Morris was behind the counter at the time and stood up from behind the counter.  He instructed the officer to "Freeze."  At this point Morris indicates that, "the gun went off."  Morris stated [that] he did not consciously shoot the officer, the gun just went off.  He admits to culpability and

6

1        responsibility in the instant offense.  He then fled the scene and was
2        later apprehended by police, in a basement of a nearby home.

    Morris reiterated that he is accepting full responsibility for the
3        shooting and is not attempting to lessen his culpability by saying he
    did not consciously shoot Officer Wheeler.
4

5    (Id. at 2 [brackets added].)

6    **DISCUSSION**

7    **I.    Existence of a Protected Liberty Interest**

8          Respondent argues that the petition should be dismissed for want of subject matter

9    jurisdiction because Petitioner has no federally protected liberty interest in parole under California

10   Penal Code section 3041.  (Answer at 4.)  Before reaching the merits of Petitioner's claim, the Court

11   addresses Respondent's argument that Petitioner has no protected liberty interest in parole which

12   would entitle him to the protections of due process at parole suitability hearings.

13         Respondent is most likely relying on In re Dannenberg, 34 Cal. 4th 1061 (2005), cert. denied,

14   126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a

15   liberty interest in parole.  This argument has been rejected by the United States Court of Appeals for

16   the Ninth Circuit.  See Sass, 461 F.3d at 1125 ("California inmates continue to have a liberty interest

17   in parole after [Dannenberg].); see also Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz

18   v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979).  Thus, in accord with Sass,

19   Petitioner was entitled to the protections of due process at his BPT hearings.  Furthermore, the Court

20   has subject matter jurisdiction under 28 U.S.C. § 2254 to decide whether Petitioner's right to due

21   process was violated by the BPT.

22   **II.   Due Process Claim**

23         Petitioner argues that BPT's decision to deny him parole was arbitrary and capricious, and

24   that their findings were unsubstantiated, thus violating his right to due process.

25       **A.    Applicable Legal Standard**

26         "In analyzing the procedural safeguards owed to an inmate under the Due Process Clause,

27   [the Court] must look at two distinct elements:  (1) a deprivation of a constitutionally protected
28

**United States District Court**
For the Northern District of California

7

United States District Court
For the Northern District of California

1    liberty or property interest, and (2) a denial of adequate procedural protections." <u>Biggs v. Terhune</u>,

2    334 F.3d 910, 913 (9th Cir. 2003).  The second prong of this test is satisfied if (1) the inmate has

3    been afforded an opportunity to be heard and, if denied parole, informed of the reasons underlying

4    the decision and (2) "some evidence" supports the decision to grant or deny parole. <u>Sass</u>, 461 F.3d

5    at 1129 (adopting "some evidence" standard for disciplinary hearings outlined in <u>Superintendent v.

6    Hill</u>, 472 U.S. 445, 454-55 (1985)).

7         "To determine whether the 'some evidence' standard is met 'does not require examination of

8    the entire record, independent assessment of the credibility of witnesses, or weighing of the

9    evidence.  Instead, the relevant question is whether there is any evidence in the record that could

10   support the conclusion reached'" by the parole board. <u>Sass</u>, 461 F.3d at 1128 (quoting <u>Hill</u>, 472 U.S.

11   at 455-56).  The "'some evidence' standard is minimal, and assures that 'the record is not so devoid of

12   evidence that the finding of the . . . board were without support or otherwise arbitrary.'" <u>Sass</u>, 461

13   F.3d 1129 (quoting <u>Hill</u>, 472 U.S. at 457).  The "some evidence" standard of <u>Hill</u> is clearly

14   established law in the parole context for purposes of § 2254(d). <u>Sass</u>, 461 F.3d at 1129.

15        Three Ninth Circuit cases provide the guideposts for applying the <u>Hill</u> "some evidence"

16   standard on this point:  <u>Biggs</u>, <u>Sass</u>, and <u>Irons v. Carey</u>, No. 05-15275, slip op. 8335, 8344 (9th Cir.

17   July 13, 2007). <u>Biggs</u> explained that the value of the criminal offense fades over time as a predictor

18   of parole suitability:  "The Parole Board's decision is one of 'equity' and requires a careful balancing

19   and assessment of the factors considered. . . .  A continued reliance in the future on an unchanging

20   factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

21   rehabilitative goals espoused by the prison system and could result in a due process violation."

22   <u>Biggs</u>, 334 F.3d at 916-17. <u>Biggs</u> upheld the initial denial of a parole release date based solely on

23   the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver

24   time . . ., should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation,

25   denying him a parole date simply because of the nature of Biggs' offense and prior conduct would

26   raise serious questions involving his liberty interest in parole." <u>Id.</u> at 916.  Next came <u>Sass</u>, which

27   criticized the <u>Biggs</u> statements as improper and beyond the scope of the dispute before the court:

28

8

United States District Court
For the Northern District of California

"Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129.  Sass determined that the parole board is not precluded from relying on unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in determining parole suitability.  See id. (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing).  Sass also put to rest any idea from Biggs that the commitment crime and pre-offense behavior only support the initial denial of parole.  Recently, Irons determined that due process was not violated by the use of the commitment offense and pre-offense criminality to deny parole for a prisoner sixteen years into his seventeen-to-life sentence.  Irons emphasized that all three cases (Irons, Sass and Biggs) in which the court had "held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence." Irons, slip op. at 8349.  Interpreting this statement from Irons to suggest that the offense can only be relied on until the minimum number of years has been reached would suffer the same problem that Sass identified in Biggs:  it is not the holding of the case.  The dicta in Biggs and Irons are speculative and do not determine when a denial of parole based solely upon the commitment offense or pre-offense behavior violates due process.  Neither logic nor Irons compel a decision that such reliance must cease when the prisoner reaches the minimum number of years in his sentence, such as the fifteenth year of a fifteen-to-life sentence.

     The upshot of these three cases is that the BPT can look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not currently suitable for parole even after the initial denial (Sass), but the weight to be attributed to those immutable events should decrease over time as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior (Biggs and Irons).  Sass did not dispute the principle that, other things being equal, a murder committed fifty years ago is less probative of a prisoner's current dangerousness than one committed ten years ago.  Not only does the passage of time in prison count for something, exemplary behavior and rehabilitation in prison count for

something according to <u>Biggs</u> and <u>Irons</u>.  <u>Hill</u>'s standard might be quite low, but it does require that the decision <u>not</u> be arbitrary, and reliance on only the facts of the crime might eventually make for an arbitrary decision.

What little guidance has come from the Supreme Court suggests that judicial review should be extremely deferential to the original decision-maker in the parole context.  In addition to the very low evidentiary standard that <u>Hill</u> imposes, other Supreme Court comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision.  <u>See</u> <u>Greenholtz</u>, 442 U.S. at 13.  "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior.  Our system of federalism encourages this state experimentation."  <u>Id.</u>

**B.**       **Parole for Murderers in California**

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years.  A first degree murder conviction yields a minimum term of twenty-five years to life and a second degree murder conviction yields a base term of fifteen years to life imprisonment.  <u>See</u> <u>Dannenberg</u>, 34 Cal. 4th at 1078; CAL. PENAL CODE § 190.  The upshot of California's parole scheme described below is that a release date normally must be set unless various factors exist, but the "unless" qualifier is so great that parole is a rarity rather than the norm for murderers.

A BPT panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date . . . .  The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates."  CAL. PENAL CODE § 3041(a).  Significantly, that statute also provides:  The panel shall set a release date,

> unless it determines that the gravity of the current convicted offense or
> offenses, or the timing and gravity of current or past convicted offense

United States District Court

For the Northern District of California

> or offenses, is such that consideration of the public safety requires a
> more lengthy period of incarceration for this individual, and that a
> parole date, therefore, cannot be fixed at this meeting.

CAL. PENAL CODE § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations § 2401 provides:  "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."  The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  CAL. CODE REGS. tit. 15, § 2402(a).

In making its determination, the parole board may consider "[a]ll relevant, reliable information available," including,

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and other
> commitment offenses, including behavior before, during and after the
> crime; past and present attitude toward the crime; any conditions of
> treatment or control, including the use of special conditions under
> which the prisoner may safely be released to the community; and any
> other information which bears on the prisoner's suitability for release.
> Circumstances which taken alone may not firmly establish
> unsuitability for parole may contribute to a pattern which results in
> finding of unsuitability.

Id. § 2402(b).

Circumstances tending to show unsuitability for parole include the nature of the commitment offense, and consideration of whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Id. § 2281(c).  This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and

11

**United States District Court**
For the Northern District of California

whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id.

Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. See id.

Circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. See id. § 2281(d).

The regulations also contain a matrix of suggested base terms that prisoners with indeterminate sentence should serve before they are released on parole. The matrix provides three choices of suggested "base terms" for several categories of crimes. See CAL. CODE REGS. tit. 15, § 2403. For first degree murders, as in Petitioner's case, the matrix of base terms ranges from the low of twenty-five, twenty-six, or twenty-seven years, to a high of thirty-one, thirty-two, or thirty-three years, depending on some of the facts of the crime.[1] Although the matrix is to be used to establish a base term, this occurs only once the prisoner has been found suitable for parole. See id. § 2403(a).

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. Dannenberg, 34 Cal. 4th at 1070-71.

While subdivision (a) of section 3041 states that indeterminate life

---

[1]  One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See CAL. CODE REGS. tit. 15, § 2403(c).

United States District Court

For the Northern District of California

1
2
3
4
5
6

(i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raise "*public safety*" concerns requiring further indefinite incarceration.  (Italics added.)  Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

7

Id. at 1070 (emphasis, brackets and parenthesis in original).  Indeed, the very regulation that

8

includes the matrix states that "[t]he panel shall set a base term for each life prisoner who is found

9

suitable for parole."  CAL. CODE REGS. tit. 15, § 2403(a) (emphasis added).  "[T]he Board,

10

exercising its traditional broad discretion, may protect public safety in each discrete case by

11

considering the dangerous implications of a life-maximum prisoner's crime individually."

12

Dannenberg, 34 Cal. 4th at 1071 (emphasis added).  The California Supreme Court's determination

13

of state law is binding in this federal habeas action.  See Hicks v. Feiock, 485 U.S. 624, 629 (1988);

14

Sandstrom v. Montana, 442 U.S. 510, 516-17 (1979).

15

The California Supreme Court has determined that the facts of the crime can alone support a

16

sentence longer than the statutory minimum even if everything else about the prisoner is laudable.

17

"While the board must point to factors beyond the minimum elements of the crime for which the

18

inmate was committed, it need engage in no further comparative analysis before concluding that the

19

particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release."

20

Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002), cert.

21

denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient

22

basis for denying parole" but might violate due process "where no circumstances of the offense

23

reasonably could be considered more aggravated or violent than the minimum necessary to sustain a

24

conviction for that offense").

25

Granted the Ninth Circuit has stated that in some cases, "indefinite detention based solely on

26

an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point

27

violate due process, given the liberty interest in parole that flows from the relevant California

28

13

statutes."  Irons, 479 F.3d at 665; see also Biggs, 334 F.3d at 917 n.5.

     **C.**    **Analysis**

         **1.**    **Opportunity to Be Heard and Reasons for Denial**

     Having stated that California inmates still maintain a liberty interest, the Court analyzes the next prong of the Biggs test.  Under the second prong of the Biggs test, the first question pertains to whether Petitioner was given an opportunity to be heard and whether he was given reasons for the parole denial.  See Biggs, 334 F.3d at 913; Sass, 461 F.3d at 1126; Greenholtz, 442 U.S. at 16.

     Petitioner fully participated in his parole hearing as evidenced by the transcript of the hearing.  (Resp't Ex. 2.)  Throughout the hearing, Petitioner was given the opportunity to make comments or objections in response to the BPT's statements, clarify any misunderstandings and give statements regarding his parole eligibility.  (Id.)

     In addition, the BPT laid out detailed reasons for denying Petitioner's parole, which are discussed further below.  The Court finds that the BPT satisfied the requirements for due process under this prong.

         **2.**    **"Some Evidence" Standard**

     The next question is whether there was some evidence to support the BPT's decision to deny parole.  What little guidance has come from the Supreme Court suggests that the "some evidence" standard is extremely deferential to the original decision-maker.  See Hill, 472 U.S. at 454 (examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence; the relevant question is whether there is any evidence in the record that could support the conclusion reached by the decision-maker).  Moreover, the Supreme Court's comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision.  See Greenholtz, 442 U.S. at 13 ("No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in

14

United States District Court

For the Northern District of California

1  predicting future behavior.").

2          **a.    The 2002 Parole Hearing**

3          At the 2002 parole suitability hearing, the BPT found that Petitioner was "not suitable for

4  parole and would pose an unreasonable risk of danger to society or a threat to public safety if

5  released from prison."  (Resp't Ex. 2 at 65:8-10, 22-23.)  Below are the factors the BPT considered

6  in making its determination to deny parole.

7          **(1)    The Commitment Offense**

8  The panel found some evidence using the POR and based on a finding that:

9              [t]he offense was carried out in an especially cruel and callous manner.
10             The offense was carried out in a dispassionate manner.  The offense
               was carried out in a manner which demonstrates an exceptionally
11             callous disregard for human suffering.  And the motive for the crime
               was inexplicable or very trivial in relationship to the offense that was
12             committed.

13  (Id. at 65:11-18.)

14         While the BPT did commend Petitioner for receiving positive support from prison staff,

15  educational achievements and future parole plans, it exercised its authority under state law to make a

16  finding of unsuitability for parole based on the commitment offense.  (Resp't Ex. 2 at 65:7-8, 67:23-

17  68:8); see Dannenberg, 34 Cal. 4th at 1071; see also Rosenkrantz, 29 Cal. 4th at 682-83.

18         **(2)    Unstable Social History**

19         The BPT also relied on Petitioner's unfavorable social history in support of its decision to

20  find him unsuitable for parole.  According to the BPT, Petitioner "drop[ped] out of school at a very

21  early age and he had a juvenile record where he engaged in juvenile conduct and [] was committed

22  to CYA [California Youth Authority]."  (Resp't Ex. 2 at 66:12-15 [brackets added].)

23         **(3)    Prior History of Escalating Criminal Behavior**

24         In addition, the panel reviewed Petitioner's criminal history as additional support of finding

25  him unsuitable for parole:

26             The prisoner has on previous occasions been involved in criminality.
               He had an escalating pattern of criminal conduct.  He had failed
27             previous grants of probation and parole and cannot be counted upon to
               avoid criminality.  He failed to profit from society's previous attempts
28             to correct his criminality.  Such attempts included juvenile probation,
               adult probation, parole, CYA and the prisoner had been sentenced to a

15

> prior prison term . . . .   The prisoner has not upgraded vocationally in terms of receiving a vocation . . . .   [T]he prisoner should continue in his endeavor to fine-tune his ability to deal with stress and to be able to face, discuss, understand, and cope with stressful situations in a non-destructive manner.

(Id. at 66:1-11, 66:15-16, 67:14-18 [brackets added].)

### (4)    Lack of Genuine Remorse

The BPT also indicated its concern over Petitioner's lack of genuine remorse, evidenced by his continual denial of the "intentional shooting" and refusal to "cooperate in identifying the accomplice."  (Id. at 50:7-19.)

### (5)    Other Factors

The following additional factors were also considered by the BPT in making its decision to deny parole:  (1) lack of a vocational upgrade, (2) opposition by the District Attorney and (3) statements by victim's family.  (Id. at 66:15-16, 49:15-51:26, 62:15-64:4.)

The BPT recommended that Petitioner "get another vocation . . . and [] upgrade vocationally."  (Id. at 68:16-18.)

The District Attorney, in opposing Petitioner's parole, stated

> He has marginally upgraded himself vocationally. . . .  I think given the background, to wit the facts of that 1972 case, with the sawed off shotgun, his conduct in robbing a jewelry store, using this gun, his claim is a quote, "unintentional shooting," strains our credibility certainly. And although it's not a big deal, I think it's relevant in the remorse in that he never did cooperate in identifying the accomplice in this case. . . . As far as his Board report, the psych report is concerned, the psych report still says Antisocial Personality, although it would be improved, could be.

(Id. at 49:20 - 51:5.)

The victim's widow addressed Petitioner and stated, "I would fear for our lives if you were on the streets.  You had a partner in crime who help you to kill Bob.  You have never said who your partner was.  I'd feel better and safer with you in prison for life."  (Id. at 62:23-27.)  The victim's nephew added, ". . . I will never have my Uncle Bob.  June will never have her husband, Bob.  My mother and her brother will never have their brother, Bob.  And Ray will never have his father. . . . This crime has impacted us, it impacts us every day.  I can't imagine (inaudible) seeing this inmate

paroled, the impact that that would have on this family and the rest of the family not represented here, that's not present here.  We feel that this inmate really would serve his term best in prison. . . ." (Id. at 63:18-63:3.)

The Court finds that the BPT's 2002 decision was based on a reasonable determination of the facts and that there was some evidence to support the conclusion to deny Petitioner's parole.  28 U.S.C. 2254(d)(2).

### b.   **Superior Court Denial**

In denying Petitioner's state habeas petition, the Contra Costa County Superior Court held that after an individualized analysis, the BPT gave sufficient reasons on the record for denying Petitioner's parole:

> Petitioner does not dispute that some evidence supports the Board's determination that his crime was especially heinous and atrocious. Nor should he.  On August 4, 1977, Petitioner and his accomplice entered Musselman's Jewelry Store.  A revolver was pointed at Mr. Musselman and Mr. Musselman was ordered to lay down.  Mr. Musselman's hands were bound and he was threatened with death. Petitioner shot and killed Officer Robert Wheeler when Officer Wheeler arrived to Musselman's Jewelry Store in response to a silent alarm.

(Resp't Ex. 4 [citations omitted].)

Because the superior court's decision is the last reasoned decision regarding Petitioner's challenge to the BPT's denial of his parole, the Court will review the decision under 28 U.S.C. § 2254(d).  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).  Having reviewed the facts of the crime as recited by the BPT and state court, and the other reasons stated for finding Petitioner ineligible for parole, the Court does not find evidence to refute the fact that the BPT's decision was supported by some evidence.

The Court concludes that the state court's decision to uphold the BPT's denial of parole was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2), nor was it contrary to, or an unreasonable application of, clearly established federal law, id. § 2254(d)(1).  Accordingly, Petitioner's due process challenge to

17

1   the denial of parole by the BPT is DENIED.

2   **III.    Ex Post Facto Claim Based on Failure to Adhere to the Sentencing Matrix**

3        Petitioner argues that his life sentence with the possibility of parole after seven years has been

4   altered by the BPT in violation of the Ex Post Facto Clause.  In effect, Petitioner claims that his

5   sentence has been changed to a life sentence with the possibility of parole after twenty-five years or a

6   life sentence without the possibility of parole.  (Pet. at 19.)

7        "The ex post facto prohibition forbids the Congress and the States to enact any law which

8   imposes a punishment for an act which was not punishable at the time it was committed; or imposes

9   additional punishment to that then prescribed."  Connor v. Estelle, 981 F.2d 1032, 1033 (9th Cir.

10  1992) (internal citations omitted).  "In accord with these purposes . . . two critical elements must be

11  present for a criminal or penal law to be ex post facto:  it must be retrospective, that is, it must apply

12  to events occurring before its enactment, and it must disadvantage the offender affected by it."

13  Weaver v. Graham, 450 U.S. 24, 29 (1981).

14       Petitioner does not claim that a new law is being applied retroactively to his case.  There are

15  no allegations that the State has changed the formula to calculate parole eligibility or suitability as

16  applied to Petitioner.  See Nulph v. Faatz, 27 F.3d 451, 455-56 (9th Cir. 1994) (the ex post facto

17  prohibition forbids the States from enhancing the measure of punishment by significantly reducing a

18  prisoner's opportunity to shorten his prison term by altering the "substantive formula" used to

19  calculate parole eligibility or suitability).  The facts show that Petitioner's earliest eligible parole date

20  was April 4, 1984, and he had eight previous parole hearings prior to the 2002 hearing.  (Pet. at 2.)

21  The Court finds that there is no cognizable claim for an ex post facto violation based on the

22  Petitioner's allegations.

23       Accordingly, Petitioner's ex post facto claim is without merit.

24  **IV.    Other Arguments**

25       Petitioner makes two additional arguments:  (1) that to deny him parole based on his

26  commitment offense violates the Ninth Circuit case Biggs and (2) that he is long overdue for parole

27

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    under the state's sentencing matrix and the BPT failed to give him a parole date in violation of his due

2    process.  The Court finds that these arguments must fail.

3        **A.    _Biggs_ Argument**

4        Petitioner argues that the BPT "used the offense as justification for finding [him] unsuitable

5    for parole."  (Pet. at 13.)  Moreover, he claims that the BPT chiefly relied upon "the crime itself,

6    and/or past (immutable) factors that will remain unchanged forever."  (Id.)  He cites Biggs for the

7    proposition that "continued reliance in the future of [sic] an unchanging factor, the circumstance of

8    the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by

9    the prison system and could result in a due process violation."  (Id. at 14 [quoting Biggs, 334 F.3d at

10    917.

11        In Biggs, the prisoner was serving a sentence of twenty-five years to life following a 1985

12    first degree murder conviction.  In the case before the Ninth Circuit, Biggs challenged the 1999

13    decision by the BPT finding him unsuitable for parole despite his record as a model prisoner.  Id. at

14    913.  While the Ninth Circuit rejected several of the reasons given by the BPT for finding Biggs

15    unsuitable, it upheld three:  (1) the commitment offense involved the murder of a witness, (2) the

16    murder was carried out in a manner exhibiting a callous disregard for the life and suffering of

17    another, and (3) Biggs could benefit from therapy.  Id.  The Ninth Circuit found no due process

18    violation and upheld the prisoner's parole denial based solely on the nature of the crime and conduct

19    before incarceration.  Id. at 916.

20

21        Petitioner's reliance on Biggs to support his argument that denial of suitability in his

22    individual case is misplaced.  First, although the Ninth Circuit in Biggs cautioned the BPT that

23    continued reliance in future parole suitability hearings on the commitment offense may violate due

24    process, id. at 916-17, it did so only in dicta.  Not only is it not Supreme Court law, but the Ninth

25    Circuit has also recently criticized the statements in Biggs as being improper and beyond the scope of

26    the dispute before the court.  The Ninth Circuit stated, "Under AEDPA, it is not our function to

27    speculate about how future parole hearings could proceed."  Sass, 461 F.3d at 1129.  Sass confirmed

28    that "evidence of [a prisoner's] prior offenses and the gravity of his convicted offenses constitute

19

some evidence to support the [b]oard's decision." Id.  In light of Sass, the BPT's consideration of

Petitioner's conviction offense, prior criminal conduct, lack of remorse and other factors satisfies the

minimal "some evidence" requirement.  Secondly, it must be noted that the BPT did not rely solely on

the commitment offense and prior history in denying Petitioner suitability for parole at his ninth

parole hearing.  The BPT relied on several factors, including Petitioner's underlying offense, his

individual record, his unstable history and pattern of escalating criminal conduct, his need to continue

self-help and therapy, the District Attorney's opposition to parole as well as the statements made by

the victim's family members, before finding him unsuitable for parole.

        Accordingly, the Court finds no merit to Petitioner's claim because he cannot rely on the dicta

in Biggs to demonstrate that the BPT violated his due process rights by denying him parole

suitability.        **B.        Matrix Argument**

        Petitioner also argues that the BPT violated his right to due process because he has served

twenty-five years, and he still has not been given a parole date.  (Pet. at 10.)  He further argues that

there was no "underlying evidentiary basis to find [him] unsuitable for parole."  (Id.)

        As explained previously, the matrix is not consulted and a term is not set under state law

unless and until the prisoner is found suitable for parole.  See Dannenberg, 34 Cal. 4th at 1070-71;

CAL. CODE REGS. tit. 15, § 2403(a).  Petitioner was not found suitable for parole; therefore, the

matrix did not need to be consulted.  Moreover, the BPT determined that Petitioner was unsuitable for

parole after considering the factors outlined above.  Thus, Petitioner's claim that there was no

"evidentiary basis" is incorrect.  Even if Petitioner had a due process right in having state law

followed by the parole authority, state law was followed by the BPT.

        Accordingly, Petitioner's claim is without merit.


                                                    **CONCLUSION**

        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.

The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

        IT IS SO ORDERED.

DATED: 7/23/07                                    _Saundra B Armstrong_

20

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MORRIS,

           Plaintiff,

  v.

BROWN et al,

           Defendant.

_____/

Case Number: CV04-02813 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 23, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Lonnie  Morris B-95677
California State Prison - San Quentin
San Quentin,  CA 94964

Dated: July 23, 2007

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

United States District Court
For the Northern District of California

21